IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICAHEL BILLUPS, # R-07807, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16-cv-00084-NJR |
| ) | |
| DR. BUTILID, DR. WILLIAMS, and ) | |
| DR. JAMES, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Robert Stoces, an inmate at Robinson Correctional Center ("Robinson"), brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff asserts claims under the Eighth Amendment, as well as Illinois state law, against three health care providers at Robinson: Dr. Butilid, Dr. Williams, and Dr. James. (Doc. 1).

## Merits Review Under 28 U.S.C. § 1915A

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

According to the complaint, in November 2013, Plaintiff arrived at Robinson Correctional Center ("Robinson") and was seen and treated by Defendant James, a medical doctor, for high cholesterol and high blood pressure. (Doc. 1, p. 4). Plaintiff began taking a medication prescribed by Dr. James to treat Plaintiff's medical condition. *Id*. at 4-5. The complaint does not identify the name of the medication nor does Plaintiff allege that Dr. James failed to advise him of any of the medication's side effects.

After taking the medication for several months, Plaintiff claims that it began to affect his ability to use his right hand and caused him severe headaches. *Id*. at 4. The complaint states that Plaintiff returned to the healthcare unit and was seen by Defendant Butilid, another medical doctor at Robinson. *Id*. Plaintiff alleges that he complained about the side effects of the

medication to Dr. Butilid, but Dr. Butilid refused to change Plaintiff's medication and instead prescribed pain medicine to treat Plaintiff's symptoms. *Id*.

The complaint maintains that the adverse side effects associated with the cholesterol medicine continued, and Plaintiff returned once again to the health care unit to complain. *Id*. This time Plaintiff was seen by yet another medical doctor, Defendant Williams. Dr. Williams decided that Plaintiff did not need to be taking any medications and discontinued the prescription. *Id*. Plaintiff alleges that Dr. Williams did nothing, however, to address Plaintiff's ongoing concerns about his inability to use his right hand. *Id*.

In December 2014, Plaintiff returned to the healthcare unit and was seen once again by Dr. Butilid. *Id*. at 5. Plaintiff asserts that Dr. Butilid "against my advice after I told him of the problems that I was having, once again ordered more of the same medications of Gemfibrozil 600 mg and aspirin daily." *Id*. After he resumed the medications, Plaintiff asserts that the adverse side effects returned, and his condition "deteriorated rapidly." *Id*.

Attached to the complaint are two grievances dated June 5, 2015, and September 9, 2015, and the responses to each grievance. (*See id*. at 9-14). Plaintiff's recounting of events in the grievances contradicts several crucial details contained in the complaint's statement of his claim. For example, the September 2015 grievance describes the sequence of events as follows: in November 2013, Defendant James prescribed Plaintiff 20 milligrams of Zocor and 81 milligrams of ECASA to manage Plaintiff's cholesterol levels. *Id*. at 13. Plaintiff continued on this same combination of medicines until May 2014 when he was seen by Defendant Williams. *Id*. After reviewing Plaintiff's records and bloodwork, Dr. Williams determined that Plaintiff only needed to take aspirin daily. *Id*. In the grievance, Plaintiff asserts that when he went to see Dr. Williams, "I was not having any pain in my body at all and my right arm and hand was not hurting at all."

*Id*. This statement directly contradicts Plaintiff's statement in the complaint that he experienced adverse side effects as a result of the medication prescribed by Dr. James and also his statement that Dr. Williams did nothing to address the ongoing problems Plaintiff was having as a result of the medications he had been prescribed. (*See id*. at 5).

Importantly, the September 2015 grievance goes on to state that Plaintiff was seen by Defendant Dr. Butilid, for the first time, in December 2014. *Id*. The grievance further notes that prior to seeing Dr. Butilid in December 2014, Plaintiff had been taking an aspirin daily and "having no problems with pain or in my hand." *Id*. at 14. This is contrary to Plaintiff's statement in the complaint that he was seen by Dr. Butilid prior to the December 2014 visit and that at this earlier visit Dr. Butilid ignored Plaintiff's complaints about headaches and his inability to use his right arm and hand. *Id*. at 5.

According to the grievance, at the December 2014 visit, Dr. Butilid decided to put Plaintiff on 600 milligrams of Gemfibrozil but failed to advise him of any of the adverse side effects of the medication.[1] *Id*. The grievance further notes that it was only then that Plaintiff began experiencing problems with headaches and his right arm and hand. Plaintiff later advised Dr. Butilid of the side effects he was experiencing, and Dr. Butilid discontinued the medication in April 2015, but according to the grievance, failed to do anything to address Plaintiff's headaches and the deterioration of the muscles in Plaintiff's hand, which Plaintiff contends were caused by the medication prescribed by Dr. Butilid. *Id*.

---

[1] Gemfibrozil is a medication used to treat high cholesterol. According to the National Institutes of Health website, the side effects associated with Gemfibrozil "can be serious" and patients should notify their doctor immediately if they experience "muscle pain, tenderness, or weakness." *MedlinePlus*, *Gemfibrozil*, https://www.nlm.nih.gov/medlineplus/druginfo/meds/a686002.html (last visited Feb. 19, 2016).

## Analysis

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to organize the claims in Plaintiff's *pro se* complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1: Deliberate Indifference to a Serious Medical Need**

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 828 (7th Cir.2009) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). To establish an Eighth Amendment medical needs claim, a plaintiff must show that: (1) the medical condition was objectively serious; and (2) the state officials acted with deliberate indifference to his medical needs. *See Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011).

The Seventh Circuit has held that a medical need is objectively "serious" where it has either "been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). Moreover, "[a] medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010)). Plaintiff has been diagnosed with high cholesterol. In addition, he alleges that the cholesterol medication he was prescribed has caused

the muscles in his right hand to deteriorate. These allegations meet the threshold requirement for a "serious" medical condition. The question, then, is whether the Defendants acted with deliberate indifference.

To establish deliberate indifference, a plaintiff "must demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett*, 658 F.3d 742, 753 (7th Cir. 2011). *See also McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). But, to be held liable, officials must "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Each Defendant's conduct will be considered in turn below.

**Dr. James**

Plaintiff contends in the complaint that in November 2013 Dr. James put him on a cholesterol medication, which caused Plaintiff to suffer headaches and an inability to use his right hand. But the September 2015 grievance, in which Plaintiff repeatedly states that he had no problems with his hand until after December 2014 when he began taking Gemfibrozil as directed by Dr. Butilid, directly contradicts this allegation.

The Seventh Circuit has noted, "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Although there may be some explanation that would clarify this contradiction in Plaintiff's favor, the Court cannot be put in

the position of guessing what that explanation might be. The Court is bound at this stage to consider only the complaint and exhibits attached to it. By alleging facts in the grievance that directly undermine his claims, Plaintiff has essentially pled himself out of court at this time. "[A] plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts . . . . Allegations in a complaint are binding admissions . . . and admissions can of course admit the admitter to the exit from the federal courthouse." *Jackson v. Marion Cnty.*, 66 F.3d 151, 153-54 (7th Cir. 1995). *See also Lekas v. Briley*, 405 F.3d 602, 613-14 (7th Cir. 2005); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997).

Even assuming that Dr. James had in fact prescribed a medication that Plaintiff had an adverse reaction to, Plaintiff has failed to allege that Dr. James acted with the requisite deliberate indifference when he prescribed the medication. *See Phillips v. Wexford Health Sources, Inc.*, 522 F. App'x 364, 366-67 (7th Cir. 2013) (noting that although the Seventh Circuit has not had the opportunity to address this precise issue, it has adopted a general rule, consistent with other circuits, that a deliberate indifference claim in this context requires a plaintiff to allege that the defendant knew that the risk of certain side effects was significant and disregarded the risk). Nothing in the complaint suggests that Dr. James was aware that the medication posed a substantial risk to Plaintiff's health and acted with deliberate indifference to that risk. For these reasons, Count 1 against Dr. James shall be dismissed without prejudice.

**Dr. Williams**

Likewise, the September 2015 grievance contradicts Plaintiff's claim that Dr. Williams ignored his concerns about the side effects caused by the cholesterol medication he was taking. The grievance clearly states that when Plaintiff went to see Dr. Williams, "I was not having any

pain in my body at all and my right arm and hand was not hurting." (Doc. 1, p. 13). Plaintiff does not allege in either the complaint or the grievance that the course of treatment prescribed by Dr. Williams (one aspirin a day) caused him any harm, and Dr. Williams surely cannot be held liable for failing to treat side effects that Plaintiff stated in the grievance were not present. As such, Count 1 against Dr. Williams shall also be dismissed without prejudice.

**Dr. Butilid**

Plaintiff's claims against Dr. Butilid present a closer call. In the complaint, Plaintiff asserts that he saw Dr. Butilid twice. At the first visit, Plaintiff claims that Dr. Butilid ignored his complaints about the serious side effects he was experiencing as a result of the medication prescribed by Dr. James, and advised him to continue taking the medication. If true, these allegations would support a claim of deliberate indifference to a serious medical condition. Likewise, Plaintiff's claim, in the complaint, that Dr. Butilid put Plaintiff back on medication that Plaintiff informed him had previously caused him serious side effects would also support a deliberate indifference claim. But these allegations are contradicted by statements Plaintiff made in the September 2015 grievance attached to the complaint.

In the September 2015 grievance, Plaintiff asserts that he saw Dr. Butilid for the first time in December 2014 and that at that time he was "having no problems with pain or in my hand." (Doc. 1, p. 14). According to the grievance, Dr. Butilid did not advise Plaintiff of the adverse side effects of the medication, but he did direct Plaintiff to discontinue the medication once he learned of the adverse side effects Plaintiff was experiencing. *Id*.

It is quite possible that Plaintiff has an actionable claim of deliberate indifference against Dr. Butilid, but as the complaint (read together with the exhibits) currently stands, Plaintiff has failed to adequately state such a claim. If Plaintiff saw Dr. Butilid for the first time in December

2014, as the grievance states, then what is the Court to make of Plaintiff's statement in the complaint that Dr. Butilid ignored Plaintiff's side effects at an earlier appointment? And if Plaintiff had never been prescribed Gemfibrozil prior to his visit with Dr. Butilid in December 2014, and had never had any adverse side effects to any other cholesterol medication (as he asserts in the grievance), why does the complaint state that Plaintiff told Dr. Butilid about the problems he was having with cholesterol medications? Given the conflicting statements in the complaint and the grievances, the Court is unable to reach a clear understanding of the sequence of events related to Dr. Butilid's treatment, or lack of treatment as the case may be, of Plaintiff's medical conditions so as to determine whether Plaintiff has stated an actionable claim against him. As such, Plaintiff's claim under Count 1 against Defendant Dr. Butilid shall be dismissed. This dismissal, however, shall be without prejudice to Plaintiff filing an amended complaint that cures the defects noted in this Order, according to the instructions set forth in the disposition below.

### Count 2: Medical Malpractice

Plaintiff also brings Illinois state law medical malpractice/negligence claims against all Defendants, based on the same conduct detailed above. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), as long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995)). At this time, Plaintiff has failed to state an actionable § 1983 claim, and, therefore, the Court may not exercise supplemental jurisdiction over the

related state law claims. As such, Plaintiff's state law claims shall also be dismissed without prejudice. This dismissal, however, shall not operate as a bar to Plaintiff bringing these claims in state court, if he so chooses.

Alternatively, if Plaintiff chooses to file an amended complaint and wishes to include, once again, the state law claims, he should be aware that under Illinois law, a plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 Ill. Comp. Stat. §5/2-622(a) (West 2013). A separate affidavit and report shall be filed as to each defendant. *See* 735 Ill. Comp. Stat. §5/2-622(b). Failure to file the required affidavits and reports is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000).

**Pending Motions**

**Motion for Service of Process at Government Expense (Doc. 3)**

Plaintiff's motion for service of process at government expense (Doc. 3) remains pending and shall be addressed once the Court has completed its threshold review of Plaintiff's amended complaint.

**Motion for Recruitment of Counsel (Doc. 4)**

Plaintiff has filed a motion requesting that the Court recruit counsel to represent him in this matter. (*See* Doc. 4). The dismissal of the complaint without prejudice raises the question of whether Plaintiff is capable of drafting a viable amended complaint without the assistance of counsel.

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding

to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

Plaintiff states that he made several attempts to secure counsel and he has submitted documentation indicating that he has done so. But Plaintiff offers no explanation as to why he is unable to represent himself in this matter. Plaintiff is a high school graduate; although not dispositive, this would suggest that Plaintiff may have the ability to provide the Court with a clear and plain statement of his claims. At this juncture, the Court is primarily concerned with whether Plaintiff has a colorable § 1983 claim, and if so, whether he is able to articulate that claim to this Court. Without a bit more information, the Court is unable to determine whether Plaintiff is capable of presenting his claims to this Court. For these reasons, Plaintiff's motion for recruitment of counsel (Doc. 4) is **DENIED**, but it is denied without prejudice to Plaintiff filing another motion for recruitment of counsel in the future. The Court will remain open to assigning counsel at a later date.

### Disposition

**IT IS HEREBY ORDERED** that Plaintiff's complaint (Doc. 1) is **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

**IT IS FUTHER ORDERED** that Plaintiff's motion for counsel (Doc. 4) is **DENIED without prejudice.** Plaintiff's motion for service of process at government expense (Doc. 3) remains **PENDING** and shall be addressed by the Court in a subsequent order.

Plaintiff is **GRANTED** leave to file his "First Amended Complaint" within **THIRTY-FIVE DAYS** of entry of this Memorandum and Order (on or before **March 25, 2016**). Should Plaintiff fail to file his First Amended Complaint within the allotted time or consistent with the

instructions set forth in this Order, this case will be dismissed for failure to comply with an order of this Court and the case will be closed. FED. R. CIV. P. 41(b). *See generally Ladien v. Astrachan,* 128 F.3d 1051 (7th Cir. 1997)*; Johnson v. Kamminga,* 34 F.3d 466 (7th Cir. 1994). Failure to file an amended complaint by the prescribed deadline will result in the dismissal of this action with prejudice and the assessment of a "strike" for purposes of 28 U.S.C. § 1915(g).

Plaintiff is **ADVISED** that should he decide to file an amended complaint, it is strongly recommended that he use the forms designed for use in this District for such actions. He should label the form, "First Amended Complaint," and he should use the case number for *this* action. The amended complaint shall present each claim in a separate count, and each count shall specify, ***by name***, each defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that defendant that violated federal or constitutional law. Plaintiff should attempt to include the facts of his case in chronological order, inserting each defendant's name where necessary to identify the actors. Plaintiff should refrain from filing unnecessary exhibits. To enable Plaintiff to comply with this order, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee remains due and payable, regardless of whether Plaintiff elects to file an amended complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v.*

*Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven (7) days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  February 19, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**