**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MICHAEL BILLUPS, #R-07807,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-00084-NJR** |
| | ) | |
| **ARKEL BUTALID,** | ) | |
| **DOCTOR JAMES,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **and DR. JANSSEN J. WILLIAMS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff William Billups, an inmate who is currently incarcerated at Robinson Correctional Center ("Robinson"), brings this *pro se* action for alleged violations of his constitutional rights under 42 U.S.C. § 1983 (Doc. 16). The complaint before the Court is an amended complaint, filed after this Court appointed counsel to assist Billups in presenting his claims. Billups's claims all stem from the core assertion that the care providers at Robinson and the supervisory medical entity (Wexford) have been deliberately indifferent to his serious medical needs, which has led to ongoing and increasingly progressive and permanent deterioration of his hand and arm. As to the individual defendants, Billups alleges that their course of treatment was not effective or sufficient to meet his needs. As to Wexford, Billups alleges that they maintain a violative policy or custom linked to the provision of inadequate care at Robinson. In connection with his claims, Billups has specifically named Drs. James, Williams, and Butalid, as well as Wexford. He seeks monetary compensation.

The case is now before the Court for a preliminary review of the amended complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).

<u>**The Complaint**</u>

According to the complaint, Billups has suffered the ill-effects of inadequate medical care since his entry into the Illinois Department of Corrections ("IDOC") in 2013 (Doc. 1). Prior to entering the IDOC, Billups alleges that he was a physical laborer and that full use of his hands was critical to his work (*Id.* at 2). During his initial time in IDOC, Billups also worked as a physical laborer for the dietary unit, work which required ample use of his hands (*Id.*). In November or December of 2013, Billups was diagnosed with high cholesterol and was prescribed Zocor and aspirin for the condition, without being warned of potential side-effects (*Id.* at 3). Sometime thereafter, Billups began to notice deterioration of the tissue in his right hand and arm (*Id.* at 3-4).

In 2014, Defendant Williams noted that Billups did not have high cholesterol and discontinued the medication for this condition (*Id.*). Billups complained about pain in his hand and arm and chronic headaches (*Id.* at 4). He also showed Defendant Williams the tissue deterioration, but received no treatment for the condition aside from aspirin (*Id.*).

In December 2014 and May 2015, Billups saw Defendant Butalid, who prescribed Gemfibrozil for high cholesterol, as well as aspirin (*Id.*). Billups informed Butalid of the deteriorating arm tissue and muscle and he told him he had completely lost the ability to pick

things up with his right hand (*Id.*). In May 2015, Defendant Butalid ordered x-rays, which showed osteoid-arthritic changes of the thumb joint and minor changes of the radial carpal joint (*Id.*). Despite the results of the x-ray, Billups alleges that Butalid did not prescribe further treatment (*Id.*).

In February 2016, after ongoing complaints of chronic pain, Billups was sent to an external care provider for surgery. Billups underwent surgery for carpal tunnel syndrome and for nerve release (in relation to nerve palsy) (*Id.* at 5). The surgery did help, but Billups alleges that the improvements were minimal and that he still suffers from noticeable muscle atrophy in his right arm and hand, as well as chronic pain (*Id.*).

Billups's complaint makes individual allegations as to each medical defendant in distinct counts (counts 1-3). As to Defendant James, Billups alleges that he was made aware of the hand and arm deterioration in 2013 and 2014 and that he did not prescribe any course of treatment for said condition (count 1) (*Id.* at 6). Billups alleges that Defendant Williams saw him in 2014, was made aware of the increasingly severe deterioration, and merely prescribed aspirin—an allegedly ineffective course of treatment (count 2) (*Id.* at 6-7). Defendant Butalid saw Billups in 2014 and 2015, prescribed ineffective medications, and ultimately ordered an x-ray (*Id.* at 7-8). Despite having ordered an x-ray, Billups contends that Butalid was deliberately indifferent because he failed to act on the findings of the x-rays (count 3).

Billups also alleges that Defendant Wexford Health Source, Inc. maintained a custom or policy of providing inadequate medical care by prioritizing cost management over the quality of care provided to inmates (*Id.* at 8). The policy manifested in a number of ways, including: no continuity of care providers; inadequate medical staffing at Robinson; inadequate medical record keeping; and discouragement of external care referrals, among other things (*Id.* at 8-9). As a

result of the custom or policy, Billups alleges that he has suffered permanent disfiguration and that he will never enjoy the opportunity of employment as a laborer due to the resulting disabilities (*Id.* at 9-10). Billups seeks monetary compensation from all parties.

## Discussion

Based on the allegations, the Court will adopt the designation of counts set forth by Billups's attorney in the amended complaint. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1:**    Eighth Amendment deliberate indifference claim against Defendant James for his alleged failure to provide any pertinent treatment for Billups's muscle and tissue deterioration in 2013 or 2014;

**Count 2:**    Eighth Amendment deliberate indifference claim against Defendant Williams for his alleged failure to provide any pertinent treatment for Billups's muscle and tissue deterioration in 2014;

**Count 3:**    Eighth Amendment deliberate indifference claim against Defendant Butalid for his alleged failure to quickly treat Billups's arm condition or to provide recommended treatment for Billups's muscle and tissue deterioration after he got an x-ray in 2014 or 2015; and

**Count 4:**    Eighth Amendment deliberate indifference claim against Wexford Health Source, Inc. for maintaining a policy or custom of providing inadequate medical care that resulted in the permanent disfiguration and damage to Billups's right hand and arm.

Count 1 shall be dismissed for failure to state a claim upon which relief may be granted. In accordance with that dismissal, Defendant James will be dismissed from this action. By contrast, Counts 2-4 will be allowed to proceed against Defendants Williams, Butalid, and Wexford for further development of the factual record.

Many of the deliberate indifference claims invoke the same legal principles, so the Court

will start with an overview of the applicable legal framework.

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of an inmate. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). To establish deliberate indifference to a medical condition, a prisoner must show a condition that is sufficiently serious (objective component) and that an official acted with a sufficiently culpable state of mind in failing to address the condition (subjective component). *Gutierrez*, 111 F.3d at 1369. Whether an injury is serious enough is a very fact specific inquiry—seriousness may be shown if an ordinary doctor opined an injury warranted treatment, if an injury significantly impacted an individual's daily activities, or if an injury caused chronic or substantial pain, among other things. *Id.* at 1370-73.

As to the subjective component, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002). If an official reasonably responds to a risk, even if harm was not averted, deliberate indifference does not exist. *Id.* A claim for medical negligence does not amount to deliberate indifference. *Gutierrez*, 111 F.3d at 1369.

In a case where an inmate claims a delay in treatment as opposed to a total denial, the

plaintiff must offer some evidence that the delay caused lasting harm. *See Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015) (finding that a plaintiff may be able to prove to a jury that delay constituted deliberate indifference where the treating doctor testified that the bones in the hand would begin fusing quickly after an injury, and thus permanent damage may occur quickly). There is no bright line standard for how much of a delay is too much. There is also no bright line standard for how much care must be provided to avoid liability for deliberate indifference. A doctor or prison official is not required to follow every recommended course of care with precision, but ignoring recommendations of an outside provider may constitute deliberate indifference if doing so would result in the provision of such inadequate care that no reasonable medical official would agree with the course of action taken. *See Perez v. Fenoglio*, 792 F.3d 768, 778-79 (7th Cir. 2015) (collecting cases) ("allegations that a prison official refused to follow the advice of a medical specialist for a non-medical reason may at times constitute deliberate indifference"); *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (stating that a prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards"). Although a prison official may not continue a course of treatment he knows is blatantly ineffective, prisoners are not entitled to receive unqualified access to healthcare. *See Holloway*, 700 F.3d at 1073-74. A doctor may provide the care he feels is reasonable so long as it falls within a "range of acceptable courses based on prevailing standards in the field." *Id.* at 1073.

Naked allegations about the existence of a harmful policy or custom are not sufficient to state a claim for deliberate indifference. *See Boyce v. Moore*, 314 F.3d 884, 891 (7th Cir. 2002). A plaintiff must introduce some evidence of a pattern of constitutional violations that would

allow the inference of a causal connection between the pattern and a larger constitutional violation. *Id.* Additionally, a plaintiff must show that the official or entity allegedly perpetuating the policy or custom had actual knowledge of the risk created by the policy or custom, and chose to act indifferently to the situation. *Id.*

Due to the constraints on liability and personal responsibility under Section 1983, plaintiffs typically attempt to state claims against individual care providers for their failure to treat, or against individual prison officials for their refusal to facilitate adequate care. *See Daniel v. Cook Cnty.,* No. 15-2832, 2016 WL 4254934 *1, *3-4 (7th Cir. Aug. 12, 2016). The Seventh Circuit recently recognized, however, that it can be difficult for an inmate to state claims against individual defendants where the inmate is provided care from many different providers. *Id.* The Seventh Circuit noted "a common scenario: [that] an institution structured its affairs so that no one person was responsible for the inmate's care." *Id.* at *4. In such a situation, a plaintiff may attempt to bring a claim to demonstrate a harmful policy or custom that led to a constitutional injury. *Id.*

"[A]n inmate can meet this burden by offering competent evidence tending to show a general pattern of repeated behavior (i.e., something greater than a mere isolated event)." *Id.* An inmate must show more than deficiencies specific to his own experience. *Id.* "When seeking to rely upon indirect proof, he must come forward with evidence that could allow a reasonable trier of fact to find, [. . . ], systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical care system." *Id.* (quotations omitted). The plaintiff must also show that an official knew about the deficiencies and failed to act. *Id.* In *Daniel*, the Seventh Circuit found that a plaintiff provided sufficient evidence of a violative custom or policy

to survive summary judgment via evidence of his own experience, testimony of medical care providers, and a Department of Justice report on health care in the institution. *Id.* at *5.

The Seventh Circuit also discussed the viability of custom or policy claims in the *Shields v. Illinois Dept. of Corr.* case, 746 F.3d 782 (2014). The *Shields* Court expounded at length upon the challenges inmates face when trying to bring a deliberate indifference claim for medical care in the prison setting, and in doing so the Court expressed significant concern about the potential complete inability of inmates to vindicate their rights under controlling precedent. However, the *Shields* Court concluded that because the plaintiff in that case had not asked the Court to overrule or reconsider problematic precedent, it would be inappropriate to do so at that juncture. Instead the Court noted in conclusion, "the evidence suggests that [the plaintiff] is the victim not of any one human being's deliberate indifference but of a system of medical care that diffused responsibility for his care to the point that no single individual was responsible for seeing that he received the care he needed in a timely way. As a result, no one person can be held liable for any constitutional violation." *Id.* at 799.

Objectively, Billups has identified an injury serious enough to pass threshold review. Complete deterioration of tissue and muscle mass in his right hand is a condition that would typically be associated with extreme and persistent pain. *See Gutierrez*, 111 F.3d at 1369. The subjective component of the deliberate indifference analysis will be conducted in turn with respect to each individual defendant. *See Greeno v. Daley*, 414 F.3d 645, 655-57 (7th Cir. 2005).

## Count 1

Billups alleges that he informed Defendant James during at least one visit that he was suffering from muscle and tissue deterioration in his right arm. Despite being able to see early signs of the deterioration, James only prescribed aspirin and a cholesterol medication. Billups

contends that this treatment was irrelevant or ineffective; however, Billups fails to state a claim because a mere disagreement with a care provider about a course of treatment is not sufficient to state a claim for deliberate indifference. The bald assertion that James did not treat the condition, despite having prescribed aspirin is not sufficient to state a claim for deliberate indifference. Billups only identifies two specific visits with James. After James prescribed medication, Billups does not allege that James became aware that the medication was ineffective. Absent such evidence, a mere disagreement about the course of treatment chosen is not enough to state a plausible claim for deliberate indifference. *See Holloway*, 700 F.3d at 1073-74. Accordingly, Count 1 shall be dismissed without prejudice against Defendant James.

## Count 2

Next, Billups alleges that Defendant Williams was deliberately indifferent to his serious medical condition because Williams saw him on multiple occasions and failed to do anything other than prescribe aspirin. Billups claims that he told Williams his condition was worsening to no avail. Taking what Billups says as true, the Court cannot dismiss the claim for deliberate indifference against Williams at this juncture because continuing a course of treatment that is known to be ineffective can constitute deliberate indifference. *See Holloway*, 700 F.3d at 1074 (noting that a prison doctor may not continue a course of action that he knows is blatantly ineffective). This claim will be allowed to proceed against Williams for development of a more comprehensive factual record.

## Count 3

Finally, Billups claims that Defendant Butalid was deliberately indifferent to his medical condition because he continued the course of treatment by prescribing aspirin and he sent Billups for outside x-rays but did not follow the recommendations of the same. Though continuing a

course of treatment known to be ineffective could present a claim for deliberate indifference, Billups does not allege that Butalid merely followed an ineffective course as Williams did. Instead, Billups admits that Butalid scheduled him for an x-ray. The additional step of scheduling him for an x-ray goes beyond following an ineffective course of treatment. Billups alleges that Butalid was also deliberately indifferent for failing to act upon the results of the x-ray, but Billups does not specifically allege that he saw Butalid after the results came back. If Billups did not see Butalid again, Butalid's failure to act on the results of the x-ray would not plausibly suggest deliberate indifference, but if he did see Butalid, the failure to change the course of treatment could constitute deliberate indifference. Given this uncertainty, the Court finds it appropriate for this count to proceed beyond screening for further development of the factual record.

## Count 4

Aside from the three doctors, Billups also claims that Wexford was deliberately indifferent to his serious medical condition because they maintained a custom or policy of keeping costs low as opposed to providing appropriate treatment. Billups alleges that this policy manifested in a number of ways, causing him permanent harm. The facts Billups present exhibit the trend identified by the Seventh Circuit as problematic in the sense that Billups had an ongoing medical condition and that he did not receive consistent medical care for that condition, in part because he saw a revolving set of providers. *See Shields*, 746 F.3d 782; *Daniel,* 2016 WL 4254934 at *3-4. At this juncture, Billups has presented sufficient factual allegations to allow this claim to proceed beyond screening. He has identified problems specific to his own situation, and he has also made reference to systemic issues identified in other similar litigation, *see Lipert v. Godinez*, Case no. 1:10-cv-04603, Doc. 339 (N.D. Ill.). Accordingly, Count 4 will be allowed

to proceed for development of a more comprehensive factual record regarding the existence of a harmful custom or policy.

## Pending Motion

Billups's Motion for Service of Process at Government Expense (Doc. 3) is **GRANTED** with respect to the claims proceeding beyond screening against Defendants Williams, Butalid, and Wexford.

## Disposition

**IT IS ORDERED** that **COUNT 1** is **DISMISSED without prejudice** against Defendant **JAMES** for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNTS 2-4** shall receive further review against **DEFENDANTS WILLIAMS, BUTALID, AND WEXFORD,** respectively. With respect to **COUNTS 2, 3,** and **4**, the Clerk of Court shall prepare for **DEFENDANTS WILLIAMS, BUTALID, AND WEXFORD**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Billups, the employer shall furnish the Clerk with the Defendant's current work address, or, if

not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Billups shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Billups shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Billups, and the judgment includes the payment of costs under § 1915, Billups will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Billups is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a

stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Billups is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  September 22, 2016**

**NANCY J. ROSENSTENGEL**
**United States District Judge**