IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL BILLUPS, )
             Plaintiff, )
v. ) Case No. 316-cv-84-DGW
ARKEL BUTALID, WEXFORD HEALTH )
SOURCES, INC., and JANSSEN J. )
WILLIAMS, )
             Defendants. )

# ORDER

**WILKERSON, Magistrate Judge:**

Now pending before the Court is the motion for summary judgment filed by Defendants on January 20, 2017 (Doc. 43), the response (Doc. 46), and the reply thereto (Doc. 47). For the reasons set forth below, the motion is **GRANTED IN PART and DENIED IN PART.**

## INTRODUCTION

Plaintiff, Michael Billups, is an inmate currently incarcerated at the Robinson Correctional Center. He filed an amended complaint, pursuant to 42 U.S.C. §1983, on August 5, 2016 (Doc. 16) in which he alleged that Defendants were deliberately indifferent to a medical condition which caused the deterioration of tissue and muscle in his right hand and arm. This condition, which started after he was prescribed cholesterol medication in November or December 2013, resulted in carpal tunnel surgery and "nerve release" which provided some relief. However, Plaintiff still suffers from pain and muscle atrophy. Plaintiff is proceeding on three counts:

> **Count 2:** Eighth Amendment deliberate indifference claim against Defendant Williams for his alleged failure to provide any pertinent treatment for Billups's muscle and tissue deterioration in 2014;
>
> **Count 3:** Eighth Amendment deliberate indifference claim against Defendant

Butalid for his alleged failure to quickly treat Billups's arm condition or to provide recommended treatment for Billups's muscle and tissue deterioration after he got an x-ray in 2014 or 2015; and

**Count 4:** Eighth Amendment deliberate indifference claim against Wexford Health Source, Inc. for maintaining a policy or custom of providing inadequate medical care that resulted in the permanent disfiguration and damage to Billups's right hand and arm.

(Doc. 18).

Defendants now seek summary judgment on the affirmative defense of failure to exhaust administrative remedies. Defendants argue that Plaintiff failed to fully and properly exhaust his remedies prior to filing suit. Plaintiff counters that he was never informed of the grievance process. A *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), hearing was held on August 23, 2017 in which the parties appeared by counsel and Plaintiff appeared by video-conference.

## BACKGROUND

It is undisputed that Plaintiff submitted three grievances related to the allegations in the amended complaint, on June 5, 2015, on August 10, 2015 (which is a copy of the previous grievance) and on September 9, 2015.

In the June 5 emergency grievance (Doc. 44-1), Plaintiff stated that he was prescribed Gemfibrozil for his "high glucose" by Dr. Butalid (Plaintiff probably meant that he was prescribed the medication for his high cholesterol levels). He noticed deterioration in the muscle between his right thumb and index finger and was told, months after beginning the medication, that this was a side-effect. He was not advised of the side-effects prior to taking the medication. The medication was discontinued and he was sent to an outside specialist who recommended physical therapy. He no longer was prescribed cholesterol medication. Plaintiff sought medical records from May 26, 2015 and information on his medical condition. At the end of the grievance, Plaintiff states: "I would like to thank S. Reis, CC II for telling me how to write an grievance." At

the hearing, Plaintiff testified that this was sarcasm – he received no help from his counselor or anyone employed by the prison.

On June 10, 2015, the Warden indicated that the matter was not an emergency and directed Plaintiff to use the normal grievance procedure. On June 16, 2015, Counselor Neese[1] responded that Plaintiff could send a request for medical records, that he will be treated via the chronic care clinic, and that treatment decisions are "guided" by the doctor. This response was made per H. Carpenter, the Director of Nursing. A grievance officer recommended that the grievance be denied on June 26, 2015 and the Warden concurred on June 30, 2015 (Doc. 44-2). Plaintiff signed an appeal on July 1, 2015. The Administrative Review Board (ARB) indicated, on July 20, 2015, that the grievance was untimely because there was no date listed in the grievance that was within 60 days of the date on the grievance (Doc. 44-3).

Plaintiff resubmitted an exact copy of the June 5 grievance (including the institutional responses) to the prison on August 7, 2015 (Doc. 44-4, p. 5) and it was received by the ARB on August 10, 2015 (*Id*. 7). It does not appear that personnel at Robinson CC or the ARB sent a response to Plaintiff regarding this resubmission.

On September 9, 2015, Plaintiff drafted a new grievance (Doc. 44-5) in which he outlined treatment he received from "Dr. James," Dr. Williams, and Dr. Butalid for his high cholesterol. He stated that Dr. James prescribed cholesterol medication, that Dr. Williams discontinued the medication (resulting in no problems with pain in his hand), but that Dr. Butalid re-prescribed cholesterol medication on December 4, 2014. The medication (Gemfibrozil) was then discontinued on April 1, 2015 because Plaintiff was experiencing pain in his right arm and hand. He stated that subsequent physical therapy did not work and that "my arm still have pain every

---

[1] It is probable that counselor Neese is the same person as the counselor Reis mentioned in Plaintiff's grievance.

day." Plaintiff concludes by stating that no health professional at Robinson CC is providing adequate treatment nor is anyone attempting to treat his condition with anything more than pain medication.

His counselor responded on September 16, 2015 by indicating that Plaintiff was scheduled to see a specialist. A grievance officer recommended that the grievance be denied and the Warden concurred on October 7, 2015 (Doc. 44-6). Plaintiff appealed to the ARB which rejected the grievance as untimely on October 21, 2015 (Doc. 44-7). In doing so, the ARB indicated that the grievance was filed more than 60 days after April 1, 2015.

When Plaintiff was initially transferred to Robinson CC, he received an Offender Orientation Manual and participated in an Orientation Program on July 16, 2013 (Doc. 47-2). The manual describes the grievance procedures and the steps that must be taken. At the hearing, Plaintiff testified that he was aware of the grievance procedure (from other inmates) and may have filed a grievance in 2008 when he was housed at Vienna CC. Plaintiff also testified, however, that it took him 6 years to complete high school (where he made mostly D grades) and that he has trouble spelling. The orientation provided at Robinson was conducted solely by inmates and he never read the entire orientation manual. In fact, he only kept the manual for a short period of time because he did not have a property box to store it and he might have a received a ticket for having it on his shelf. Plaintiff filled out his grievances with the help of another inmate who told him what to write and gave him instructions on putting them in the mailbox for consideration. At the hearing, Plaintiff did not appear to have any problems understanding and answering questions. The Court noted that his hand was in a brace at the hearing.

The Court finds that while Plaintiff may not have been familiar with the details of the grievance procedure, he knew enough to submit a grievance if he had a problem. As such, there

are no other grievances, not contained in the record, that Plaintiff submitted or attempted to submit, other than the June 5, 2015 and September 9, 2015 grievances, related to the claims in this case.

## STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code,[2] an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id.*

---

[2] The Code recently was amended on April 1, 2017.

§504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* §504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

As set forth above, Plaintiff was at least aware that he must file a grievance in order to complain about the conditions of his confinement. While someone else might have written Plaintiff's grievances, the information contained therein could only have been known by Plaintiff. And, notwithstanding his lack of knowledge, Plaintiff was capable of submitting his grievances to the appropriate persons and appealing them in a timely manner. Therefore, the process was not rendered unavailable to him. However, the Court does not read the grievances as narrowly as the ARB or as Defendants suggest.

At the outset, there is no grievance in which Plaintiff complained about the medical care he received from Dr. Williams or with respect to Wexford. Plaintiff only vaguely refers to "medical staff" in the June 5 grievance but it is unclear who Plaintiff is talking about. While Plaintiff mentions Dr. Williams in his September 9 grievance, it is merely to provide context. Indeed, he indicates in the grievance that "Dr. Williams was now gone to who knows where" before he could ask him questions about his medical status (Doc. 44-5, p. 2). The implication being that Dr. Williams no longer was providing medical care at the time of the grievance or after Plaintiff was under Dr. Butalid's care which began at some point in late 2014. Thus, neither grievance fulfills the requirement that Plaintiff name the person who is involved in the complaint nor the purpose of allowing the prison the opportunity to remedy the issue. Both Dr. Williams and Wexford are entitled to summary judgment.

Plaintiff does, however name Dr. Butalid and assert complaints about the treatment that he was receiving from the doctor. Both the June 5 and the September 9 grievances indicate that Plaintiff was still suffering from the side-effects of the Gemfibrozil on the date the grievances were written. The June 5 grievance did not specifically state that Plaintiff was not receiving adequate medical care; the September 9 grievance, however, does state that Plaintiff was still suffering from

his condition and that he had not received adequate medical care at the prison. In responding to both grievances, the ARB rejected them as untimely. The ARB, however, merely focused on dates contained in the grievance without appreciating the content of the grievance: namely that Plaintiff was suffering on-going problems that were not resolved when he stopped taking medication or when subsequent medical care was rendered. Plaintiff's medical issues did not begin and end when he stopped taking the medication, rather they became "chronic" as set forth in the grievance. As such, the Court finds that Plaintiff exhausted his administrative remedies as to his claims against Dr. Butalid.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by Defendants on January 20, 2017 is **GRANTED IN PART and DENIED IN PART.** The Motion is **GRANTED** as to Defendants Wexford Health Source, Inc. and Janssen J. Williams and **DENIED** as to Arkel Butalid. Wexford and Williams, and the claims against them, are hereby **DISMISSED WITHOUT PREJUDICE**. This matter shall proceed on Count 3 only, an Eighth Amendment deliberate indifference claim against Defendant Butalid for his alleged failure to quickly treat Billups's arm condition or to provide recommended treatment for Billups's muscle and tissue deterioration after he got an x-ray in 2014 or 2015.

**DATED: September 27, 2017**

**DONALD G. WILKERSON**
**United States Magistrate Judge**